IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PGP, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 17-cv-000954-JPM |
| v. | ) |
| | ) |
| TPII, LLC, BRYAN KEITH BURNS, and | ) |
| HEIDI NEWFIELD, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**
**AND**
**DENYING DEFENDANTS' MOTION FOR PRELIMINARY INJUNCTION**

The cause is before the Court on Motions for Motion for Preliminary Injunction by both parties. Plaintiff PGP, LLC's Motion was filed on June 26, 2017. (ECF No. 7.) Defendants' TPII, LLC, Bryan Keith Burns, and Heidi Newfield's Motion was filed on July 27, 2017. (ECF No. 21.) After responses from the opposing parties and replies by the proponents, the Court held a joint Preliminary Injunction Hearing on this motion on September 8, 2017. For the reasons discussed below, the Court **DENIES** each party's respective Motion for Preliminary Injunction.

I.  BACKGROUND

This case arises out of a dispute between musicians who perform as the band Trick Pony (Defendants Burns and Newfield, and their corporation TPII) and their former manager Herbert Graham (the sole shareholder of Plaintiff PGP). (Complaint, ECF No. 1 ¶¶ 13-25.) Defendants perform country music as the band Trick Pony. (Id.) Plaintiff alleges that their use of the name "Trick Pony" infringes on his two trademarks (the "Trick Pony

Page 1

Trademarks"[1]), and that the Defendants have breached a trademark licensing contract between the parties. (Id. ¶¶ 66-88.)

### a. Factual History

From 2000 to 2006, Defendants Burns and Newfield performed as the country music band Trick Pony, along with a third musician, Ira Dean. (ECF No. 1 ¶¶ 13-25.) Herbert Graham managed Trick Pony during that time. (Id.) Newfield left the band in 2006, and Burns and Dean continued performing as Trick Pony until 2008. (Id.) While Trick Pony was active, they secured intellectual property protection on their name through a service mark on live music performances and a trademark on musical recordings and promotional goods. (Id.) The trademark was cancelled in 2011 and the service mark as cancelled in 2013, both for failure to file renewal statements. (Id.) In 2011 and 2013, Graham filed for the Trick Pony Trademarks; these were registered in 2014. (Id. at PageID 100-01.)

In February 2014, Newfield, Burns, and Dean set out to re-form Trick Pony. (Id.) They formed a company called TPIII (TP3), and through that company licensed the Trick Pony Trademarks from Graham on March 1, 2014. (Id. at PageID 102.) In April 2014, Dean left the re-formed Trick Pony, and Newfield and Burns formed Defendant corporation TPII (TP2) to continue performing. (Id.) TP2 licensed the Trick Pony Trademarks from Graham in 2014, and renewed their license in 2015. (Id. at PageIDs 102-03.) Under both licenses, Graham was to recieve 15% of net sales of products bearing the Trick Pony Trademarks, as well as an unspecified amount of live performance revenues. (ECF No. 1-4 at PageID 136,

---

[1] "The 'Trick Pony Trademarks' are (1) Registration No. 4,522,403 (the '2014 Trademark'), which covers use of the Trick Pony mark in musical sound and video recordings, as well as use of the mark on posters, photographs, and clothing and (2) Registration No. 4,615,059 (the '2014 Service Mark'), which covers used of the Trick Pony mark for 'entertainment services, namely live performances by a musical band.'" (ECF No. 7-1 at PageID 205, n.1.)

ECF No. 1-6 at PageID 157.)  TP2 did not sign a 2016 license, but Newfield and Burns have continued to perform as Trick Pony after their license to use the Trick Pony Trademarks expired.  (ECF No. 1 at PageID 97; ECF No. 21 at PageID 369, 373.)

### b. Procedural History

On June 19, 2017, Plaintiff filed this suit in the Middle District of Tennessee.  (ECF No. 1.)  On June 26, 2017 the case was reassigned to this Court.  (ECF No. 14.)  On June 26, 2017, Plaintiff filed a motion for a preliminary injunction, seeking to enjoin Defendants from performing under the name "Trick Pony."  (ECF No. 7.)  On July 10, 2017, the Court entered an order to set the briefing schedule on the instant motion, ECF No. 20, and on July 17, 2017, the instant hearing was set.  (ECF No. 26.)  On July 12, 2017, Defendants filed their response to Defendant's motion for a preliminary injunction, as well as a cross-motion for their own preliminary injunction to "prohibit Plaintiff and persons acting in concert with it from interfering with [Defendants'] use of the Marks and maintain the status quo *pendente lite*."  (ECF No. 21 at PageID 369.)  On July 27, Plaintiff filed their reply to Defendants' response and a response to Defendants' cross-motion.  (ECF No. 31.)

On July 12, 2017, Defendants also filed a Motion to Dismiss under Rule 12(b)(6).  (ECF No. 22.)  On August 4, 2017, Plaintiff filed a response to that motion and a Motion for Summary Judgment as to Defendants' liability for trademark infringement and breach of contract.  (ECF No. 32.)  On August 11, 2017, Defendants filed a reply to Plaintiff's response to the Motion to Dismiss.  (ECF No. 35.)  On August 23, 2017, Defendants filed a response to Plaintiff's Motion for Summary Judgment.  (ECF No. 39.)  On September 1, 2017, Plaintiff filed a reply to Defendants' response to the Motion for Summary Judgment.  (ECF No. 42.)

Both the Motion to Dismiss and the Motion for Summary Judgment remain pending before the Court.

## II.   LEGAL STANDARD

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."  <u>Univ. of Tex. v. Camenisch</u>, 451 U.S. 390, 395 (1981).  "Accordingly, a party 'is not required to prove his case in full at a preliminary injunction hearing and the findings of fact and conclusions of law made by a court granting the preliminary injunction are not binding at trial on the merits.'"  <u>Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.</u>, 511 F.3d 535, 542 (6th Cir. 2007) (quoting <u>Camenisch</u>, 451 U.S. at 395).

Four factors are used to determine whether injunctive relief is appropriate: (1) the likelihood of success on the merits; (2) whether the injunction will save the movant from irreparable injury; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the injunction.  <u>Ohio Democratic Party v. Donald J. Trump for President, Inc.</u>, No. 16-4268, 2016 WL 6608962, at *1 (6th Cir. Nov. 6, 2016).  "These four considerations are factors to be balanced, not prerequisites that must be met."  <u>Tenke Corp.</u>, 511 F.3d at 542 (internal quotation marks omitted) (quoting <u>Camenisch</u>, 451 U.S. at 395).  No single factor is dispositive.  <u>Capobianco, D.C. v. Summers</u>, 377 F.3d 559, 561 (6th Cir. 2004); <u>see also</u> <u>Mich. Bell Tel. Co. v. Engler</u>, 257 F.3d 587, 592 (6th Cir. 2001).  The burden of persuasion is on the party seeking the injunctive relief.  <u>See</u> <u>Stenberg v. Cheker Oil Co.</u>, 573 F.2d 921, 925 (6th Cir. 1978).

"An injury is irreparable if it is not fully compensable by monetary damages,' that is, 'the nature of the plaintiff's loss would make damages difficult to calculate.'"  <u>Southern

Glazer's Dist. of Ohio, LLC v. Great Lakes Brewing Co., 860 F.3d 844, 852(6th Cir. 2017) (quoting Obama for Am. v. Husted, 697 F.3d 423, 436 (6th Cir. 2012) and Basicomputer Corp. v. Scott, 973 F.2d 507, 511 (6th Cir. 1992)).

A trademark owner must show "likelihood of confusion" to obtain equitable relief. Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc., 670 F.2d 642, 647 (6th Cir. 1982) (citing Warner Bros., Inc. v. Gay Toys, Inc., 658 F.2d 76 (2d Cir. 1981)). The Sixth Circuit has adopted an eight-factor test to determine likelihood of confusion. The eight factors this Court considers are: "(1) strength of the plaintiff's mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark; (8) likelihood of expansion of the product lines." Id. at 648. "While all of these factors are relevant, actual confusion is 'obviously the most probative proof of the likelihood of confusion.'" U.S. Structures, Inc. v. J.P. Structures, Inc., 130 F.3d 1185, 190 (6th Cir. 1997) (quoting Frisch's, 670 F.2d at 648).

### III. PLAINTIFF'S MOTION
#### a. Likelihood of Success on the Merits

Plaintiff PGP asserts that they have shown likelihood of success on the merits through a presumption that Defendants' use of Trick Pony establishes "likelihood of confusion." (ECF No. 31 at PageID 716.) Specifically, PGP's position is that the Defendants' status as former licensees of the trademark who have used the trademark without authorization after their license expired establishes "likelihood of confusion". (Id.; ECF No. 7 at PageIDs 213-15) PGP relies on two Sixth Circuit cases for this position: Blue Cross & Blue Shield Mutual of Ohio v. Blue Cross and Blue Shield Association, 110 F.3d 318 (6th Cir. 1997) and U.S. Structures, Inc. v. J.P. Structures, Inc., 130 F.3d 1185 (6th Cir. 1997). (ECF No. 7 at Page

Page 5

IDs 213-15; ECF No. 31 at PageID 716; PGP first mentioned U.S. Structures at the Preliminary Injunction Hearing on September 8, 2017.) According to PGP, the Court need not even engage the Frisch's factors; the case law alone requires that the Court find "likelihood of confusion" based on Defendants' former-licensee status. (ECF No. 31 at PageIDs 716-17.)

PGP's reliance on a legal presumption of "likelihood of confusion" in the instant case is unfounded. Both Sixth Circuit cases that PGP relies on are readily distinguishable from the instant case. Crucially, in both Blue Cross and U.S. Structures, the infringer's unauthorized use created a likelihood of confusion with other, authorized uses. See 110 F.3d at 333 (referencing confusion between licensor, former licensee and other licensee "member plans") and 130 F.3d at 1190 (former licensor's continued use "falsely suggested that the defendants' business remained affiliated with U.S. Structures" by advertising Archadeck, a U.S. Structures product for which other authorized uses existed). For a former licensee's posture, without more, to create a "likelihood of confusion," there must be an authorized use; without an authorized use, there is nothing for the unauthorized product to be confused with. Further, while PGP has quoted a favorable passage of Blue Cross in its memoranda (e.g., ECF No. 31 at PageIDs 716-17), a closer inspection of the passage shows that the court considered the licensee's unlicensed use of the trademark to be persuasive—not conclusive. 110 F.3d at 333 ("*Supporting that conclusion* was case law establishing that the unauthorized use of a mark by a former licensee is particularly likely to cause consumer confusion.") (emphasis added). The Blue Cross court affirmed the injunction based on the district court's analysis of the Frisch's factors. 110 F.3d at 333.

Turning to the Frisch's factors in this case, the Court considers them in turn. Bearing in mind that this is not a typical trademark infringement suit because the mark holder, PGP, has created no authorized uses for the mark, the Court finds the following:

(1) Strength of the registrant's mark – The Trick Pony Trademarks appear strong. In fact, they appear to be the only registered marks on the service or product.

(2) Relatedness of the services – Defendants are performing the same services now that they were when authorized by the PGP/Graham. However, PGP is neither a market participant nor a licensor to other authorized users. Because Defendants' service is the only service in the market, there is no relatedness between Defendants' service and PGP's service.

(3) Similarity of the marks – The marks are identical; Defendants are continuing to use the same name now that they were under the license. However, PGP is not currently using the marks in commerce (either directly or by authorized license), so there is no similarity in practice.

(4) Evidence of actual confusion – Because PGP has created no authorized uses, there can be no actual confusion between authorized and unauthorized products.

(5) Marketing channels used – There are no overlapping marketing channels. PGP does not market any authorized products, so it uses no marketing channels.

(6) Likely degree of purchaser care and sophistication – This factor is irrelevant in the instant case. Purchaser care and sophistication cannot affect purchasers' choice between authorized and unauthorized services where there is no authorized service.

(7) Defendants' intent in selecting the mark – This weighs in PGP's favor, because Defendants have continued to perform as Trick Pony knowing that another owned the Trick Pony Trademarks.

(8) Likelihood of expansion of the product lines – The Court finds expansion unlikely, and if Defendants do expand their product lines, they will do so to non-infringing products.

The only factors that clearly weigh for PGP are (1) strength of the registrant's mark and (7) Defendants' intent in selecting the mark. (3) similarity of the marks is also partially in PGP's favor; while the marks are the same, PGP does not actually use or license its marks. Considering all of the factors in light of the fact that PG is not using the Trick Pony Trademarks, the Court finds no likelihood of confusion in the instant case.

### b. Irreparable Harm

Similar to their argument for likelihood of success on the merits, PGP argues that they have satisfied this prong as a matter of legal presumption. (ECF No. 31 at PageID 716.) The presumption rests on the same cases that PGP relied on to prove likelihood of success on the merits, and the Court rejects that presumption for the same reasons stated in addressing that factor.

The record reflects that PGP will not suffer any irreparable harm from Defendants' ongoing use of the Trick Pony Trademarks. Although PGP has requested a permanent injunction as relief, counsel informed the Court at the Preliminary Injunction Hearing that what PGP ultimately wants is the most profitable resolution of the dispute: for Burns and Newfield to sign a new license for the Trick Pony Trademarks. The measure of PGP's damages from any infringement during litigation should not be difficult to calculate in light of the 2014 and 2015 licensing agreements. (ECF Nos. 1-4, 1-6.) Therefore, the Court finds no irreparable harm because PGP's injury would be fully compensable by monetary damages, and the nature of PGP's loss is within the ambit of the Court to quantify.

### c. Substantial Harm to Others

PGP argues that a preliminary injunction would not cause harm to others because "[n]o third parties will be affected in any way[,]" and any harm to Defendants is Defendants' own doing. (ECF No. 7-1 at PageIDs 215-16.) Defendants have not rebutted these arguments, and the Court finds that PGP has satisfied this factor.

### d. Public Interest

PGP argues that the public interest favors granting the injunction because doing so would avoid fraud and consumer confusion. (ECF No. 7-1 at PageID 216.) The Court recognizes these potential benefits to the public, but also considers that there can be no consumer confusion by the public without competition between authorized and unauthorized trademark sellers. Further, the Court considers that the public interest sometimes disfavors granting injunctive relief to non-practicing entities in the patent context. See eBay v. MercExchange, L.L.C., 547 U.S. 388, 396-97 (2006) (Kennedy, J., concurring) ("When . . . the threat of an injunction is employed simply for undue leverage in negotiations, legal damages may well be sufficient to compensate for the infringement and an injunction may not serve the public interst.") In the instant case, the Court finds that granting injunctive relief to PGP would be against the public interest because it would grant a non-practicing entity undue leverage in licensing negotiations. Therefore, the Court finds that PGP has not carried its burden as to public interest.

### e. Weighing the Factors

PGP seeks to enjoin Defendants' use of the Trick Pony Trademarks until a final judgment in this case. (ECF No. 7-1 at PageID 205.) Because of the acute impact the injunction would have on Defendants and the relatively small impact on the public, the Court

considers the likelihood of success on the merits and the possibility of irreparable harm to be the most important factors in deciding the instant motion. Although PGP satisfied one of the two least-important factors, the balance of factors weighs against granting PGP's motion. Accordingly, the Court finds that the motion should be DENIED.

## IV. DEFENDANTS' MOTION
### a. Likelihood of Success on the Merits

Defendants have not argued why they are likely to succeed on the merits. In their Motion, reply, and presentation at the Preliminary Injunction Hearing, Defendants presented many of their merits arguments to the Court. What they did not do, however, is put those arguments in the context of success on the merits. For that reason, the Court finds that Defendants have failed to carry their burden as to likelihood of success on the merits.

### b. Irreparable Harm

Defendants have not argued any form of irreparable harm, and the record does not reflect that any irreparable harm will befall Defendants if the Court does not grant their motion. For those reasons, the Court finds that Defendants have failed to carry their burden as to irreparable harm.

### c. Substantial Harm to Others

Defendants have not argued that granting their motion would not cause substantial harm to others, nor does the record reflect any support for that argument. For those reasons, the Court finds that Defendants have failed to carry their burden as to substantial harm.

### d. Public Interest

Defendants have not argued that granting their motion is in the public interest, nor does the record reflect any support for that argument. For those reasons, the Court finds that Defendants have failed to carry their burden as to substantial harm.

### e. Weighing the Factors

Defendants have not carried their burden on any of the four factors. No matter how this Court weighs the respective factors, none are satisfied, and Defendants have not made even a prima facie showing that their motion is meritorious. The Court DENIES their motion.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** each party's respective Motion for Preliminary Injunction.

**IT IS SO ORDERED**, this 12th day of September, 2017.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT COURT JUDGE